**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**LAREDO DIVISION**

| | | |
|---|---|---|
| **RAUL GONZALEZ** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 5:17-cv-00147** |
| | § | |
| **STATE FARM LLOYDS AND** | § | |
| **STEVEN DOUGLAS SUMRALL,** | § | |
| **Defendants.** | § | **JURY REQUESTED** |

**ORIGINAL ANSWER AND REQUEST FOR JURY TRIAL**
**BY STATE FARM LLOYDS**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES State Farm Lloyds (for convenience, herein sometimes called "State Farm"), and files this Original Answer in response to Plaintiff's Original Petition (for convenience, such Original Petition, Jury Demand and Request for Disclosure, and any amendment or supplement to it is herein called "Complaint") of Plaintiff Raul Gonzalez. Without waiving any applicable defenses, whether affirmative or otherwise, and reserving the right to assert and rely on any such applicable defenses as may become available or apparent during the course of this action and still insisting upon any and all policy conditions, exclusions, requirements, and other policy terms now or later arising, State Farm Lloyds would respectfully show the Court as follows:

**RESPONSES TO PLAINTIFF'S ALLEGATIONS**

**Plaintiff's Complaint – "A.  DISCOVERY CONTROL PLAN"**

1.      No answer is necessary to the allegations in paragraph 1 of Plaintiff's Complaint concerning the discovery level under Texas state practice, as this action has been removed to this Court.

**Plaintiff's Complaint – "B.  PARTIES"**

2.      With respect to paragraph 2 of Plaintiff's Complaint, Defendant admits that Plaintiff is a citizen of the State of Texas.

3.      With respect to paragraph 3 of Plaintiff's Complaint, Defendant admits that State Farm Lloyds is an insurance company engaging in the business of insurance in the State of Texas. State Farm Lloyds is an unincorporated insurance association whose underwriters were and are all citizens of states other than Texas.  Defendant denies any remaining allegations contained in paragraph 3 of Plaintiff's Complaint.

4.      With respect to paragraph 4 of Plaintiff's Complaint, Defendant admits that Steven Douglass Sumrall is a resident of the State of Texas; however, Mr. Sumrall has been improperly joined and his citizenship should therefore be disregarded.  In addition, Mr. Sumrall is not a party to the policy of insurance under which Plaintiff purports to be claiming in this action and therefore cannot be liable for any supposed breach of contract or any supposed breach of any contended duty of good faith and fair dealing.  Also, under Texas law, when an adjuster's actions can be accomplished by the insurer through an agent, the adjuster's actions are indistinguishable from the insurer's actions and are therefore insufficient to support a claim against the adjuster under Chapter 541 of the Texas Insurance Code.  Further, Mr. Sumrall is not an "insurer authorized to engage in business as an insurance company" and therefore cannot be liable for any supposed violation of Chapter 542 of the Texas Insurance Code.  Moreover, under Texas law, (a) there is no cause of action for any supposedly negligent claims handling; (b) any statements purportedly made in connection with post-loss investigation or handling of an insurance claim are not actionable misrepresentations; and (c) matters of opinion are not actionable misrepresentations.

**Plaintiff's Complaint – "C.  JURISDICTION"**

5.      With regard to the allegations contained in paragraphs 5 and 6 of Plaintiff's Complaint, Defendant contends that jurisdiction is properly with the United States District Court, Southern District, Laredo Division, because the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and because Mr. Sumrall has been improperly joined and his citizenship should be disregarded, providing complete diversity between the parties. Defendant denies any allegations by Plaintiff that tend to contradict that jurisdiction lies with the United States District Court, Southern District, Laredo Division.

**Plaintiff's Complaint - "D.  VENUE"**

6.      With regard to the allegations contained in paragraph 7 of Plaintiff's Complaint, Defendant admits that venue is proper in this judicial district and division.  Defendant denies any allegations by Plaintiff that tend to contradict venue in the Laredo Division of the United States District Court, Southern District of Texas.

**Plaintiff's Complaint - "E.  CONDITIONS PRECEDENT"**

7.      Defendant denies the allegations in paragraph 8 of Plaintiff's Complaint.

**Plaintiff's Complaint – "F. AGENCY AND *RESPONDEAT SUPERIOR*"**

8.      Defendant denies the allegations in paragraph 9 of Plaintiff's Complaint.

**Plaintiff's Complaint – "G.  FACTS"**

9.      With respect to paragraph 10 of Plaintiff's Complaint, Defendant denies that State Farm Lloyds issued policy number "93b2C9147."  State Farm Lloyds issued a Homeowners' Policy No. 83-B2-C914-7, in effect as of the date of the alleged loss made the basis of Plaintiff's insurance claim at issue in this action, wherein Plaintiff Raul Gonzalez and Raquel Reyna were listed as "Named Insureds" and 408 Campanario Lane, Laredo, Texas 78043-5100, was listed as

the "residence premises," and which provided insurance coverage in accordance with and subject to the terms, conditions, exclusions, and limitations shown in such policy. Defendant denies any remaining allegations contained in paragraph 10 of Plaintiff's Complaint and specifically denies any allegations that tend to contradict, contravene, alter, or enlarge the terms, conditions, exclusions, or limitations of the policy under which Plaintiff purports to be claiming in this action.

10.     With respect to paragraphs 11, 12, 13, and 14 of Plaintiff's Complaint, Defendant admits that (a) an insurance claim was reported on or about May 1, 2017, by or for Plaintiff and/or Raquel Reyna to State Farm Lloyds under a homeowners insurance contract for alleged damage to Plaintiff's dwelling purportedly caused by a storm on or about April 29, 2017; (b) State Farm inspected Plaintiff's property on or about May 10, 2017; (c) State Farm prepared an estimate or estimates of repairs to the covered storm damage that he observed in the course of the inspection of Plaintiff's property; and (d) the loss was below Plaintiff's deductible. Other than the foregoing, Defendant denies all of the remaining allegations in paragraphs 11, 12, 13, and 14 of Plaintiff's Complaint and specifically denies any allegations that tend to contradict, contravene, alter, or enlarge the terms, conditions, exclusions, or limitations of the policy under which Plaintiff purports to be claiming in this action.

11.     Defendant denies the allegations contained in paragraph 15 of Plaintiff's Complaint.

12.     Defendant denies the allegations contained in paragraph 16 of Plaintiff's Complaint.  Mr. Sumrall is not the person who inspected the property or who sent a letter to Plaintiff dated May 11, 2017.

13.     Defendant denies the allegations contained in paragraph 17 of Plaintiff's Complaint.

14.     Defendant denies the allegations contained in paragraph 18 of Plaintiff's Complaint.

15.     Defendant denies the allegations contained in paragraph 19 of Plaintiff's Complaint and specifically denies any violation of the Texas Insurance Code §541.060(a)(1).

16.     Defendant denies the allegations contained in paragraph 20 of Plaintiff's Complaint and specifically denies any violation of Texas Insurance Code § 541.0060 (a)(2)(A).

17.     Defendant denies the allegations contained in paragraph 21 of Plaintiff's Complaint and specifically denies any violation of Texas Insurance Code §541.060 (a)(7).

18.     Defendant denies the allegations contained in paragraph 22 of Plaintiff's Complaint and specifically denies any violation of Texas Insurance Code §541.060 (a)(3).

19.     Defendant denies the allegations contained in paragraph 23 of Plaintiff's Complaint and specifically denies any violation of the Texas Insurance Code, Prompt Payment of Claims, §542.055.

20.     Defendant denies the allegations contained in paragraph 24 of Plaintiff's Complaint and specifically denies any violation of the Texas Insurance Code, Prompt Payment of Claims, §542.056.

21.     Defendant denies the allegations contained in paragraph 25 of Plaintiff's Complaint and specifically denies any violation of the Texas Insurance Code, Prompt Payment of Claims, §542.058.

22.     Defendant denies the allegations contained in paragraph 26 of Plaintiff's Complaint.

23.      Defendant denies the allegations contained in paragraph 27 of Plaintiff's Complaint.  Defendant specifically denies that State Farm or Mr. Sumrall supposedly made any

"false representations" of material facts to Plaintiff or that they "knowingly concealed" any material information from Plaintiff as contended in Plaintiff's Complaint.

24.    Defendant denies the allegations contained in paragraph 28 of Plaintiff's Complaint.  Defendant specifically denies that anything allegedly done or not done by State Farm or Steven Douglass Sumrall caused damages to Plaintiff as contended by Plaintiff or that it was necessary for Plaintiff to retain the services of an attorney to bring this action because of anything allegedly done or not done by Defendant.

**Plaintiff's Complaint - "H. CAUSES OF ACTION"**

**"I.    BREACH OF CONTRACT** (against State Farm)**"**

25.    With respect to paragraphs 29 and 30 of Plaintiff's Complaint, Defendant denies the allegations contained in paragraphs 29 and 30 of Plaintiff's Complaint and specifically denies any allegations that tend to contradict, contravene, alter, or enlarge the terms, conditions, exclusions, or limitations of the policy under which Plaintiff purports to be claiming in this action.

**"II.    PROMPT PAYMENT OF CLAIMS STATUTE** (against State Farm)**"**

26.    Defendant admits that an insurance claim was reported on or about May 1, 2017, by or for Plaintiff and/or Raquel Reyna to State Farm Lloyds under a homeowners insurance contract for alleged damage to Plaintiff's dwelling purportedly caused by a storm on or about April 29, 2017 but denies the remaining allegations contained in paragraph 31 of Plaintiff's Complaint.

27.    Defendant denies the allegations contained in paragraphs 32 and 33 of Plaintiff's Complaint. Defendant specifically denies that anything State Farm Lloyds has or has not done with regard to Plaintiff's insurance claim at issue in this action constitutes an alleged violation of any provision of the "Texas Insurance Code, Prompt Payment of Claims" as asserted by Plaintiff in his Complaint, including but not limited to § 542.055, § 542.056, and § 542.058.

28.     With respect to paragraph 34, Defendant denies any liability under §542.060 of the Texas Insurance Code and denies any remaining allegations contained in paragraph 34 of Plaintiff's Complaint.

**"III.     UNFAIR SETTLEMENT PRACTICES/BAD FAITH** (against all Defendants**)"**

29.     No answer is necessary to paragraph 35 of Plaintiff's Complaint.  To the extent an answer is required, Defendant incorporates its responses to paragraphs 1-34 by reference herein.

30.     Defendant denies the allegations contained in paragraph 36 of Plaintiff's Complaint.

**"DEFENDANT** State Farm**"**

31.     Defendant denies the allegations contained in paragraph 37 of Plaintiff's Complaint.

32.     Defendant denies the allegations contained in paragraph 38 of Plaintiff's Complaint.

**"DEFENDANT** Steven Douglass Sumrall**"**

33.     Defendant admits that insurance adjusters are listed as persons "engaged in the business of insurance" under Tex. Ins. Code. 541.002(2) but denies the remaining allegations contained in paragraph 39 of Plaintiff's Complaint.

34.     Defendant denies the allegations contained in paragraph 40 of Plaintiff's Complaint.

35.     Defendant denies the allegations contained in paragraph 41 of Plaintiff's Complaint.

36.     Defendant denies the allegations contained in paragraph 42 of Plaintiff's Complaint.

37.     Defendant denies the allegations contained in paragraph 43 of Plaintiff's Complaint.

38.     Defendant denies the allegations contained in paragraph 44 of Plaintiff's Complaint.  Defendant specifically denies any supposed act done or not done by Mr. Sumrall was committed "knowingly" or that any such act was a "producing cause" of Plaintiff's damages.

### "IV.    DTPA VIOLATIONS (against all Defendants)"

39.     No answer is necessary to paragraph 45 of Plaintiff's Complaint.  To the extent an answer is required, Defendant incorporates its responses to paragraphs 1-44 by reference herein.

40.     Defendant admits that State Farm Lloyds issued a Homeowners' Policy No. 83-B2-C914-&, in effect as of the date of the alleged loss made the basis of Plaintiff's insurance claim at issue in this action, wherein Plaintiff Raul Gonzalez and Raquel Reyna were listed as "Named Insureds" and 408 Campanario Lane, Laredo, Texas 78043-5100, was listed as the "residence premises," and which provided insurance coverage in accordance with and subject to the terms, conditions, exclusions, and limitations shown in such policy. Otherwise, Defendant denies the allegations contained in paragraph 46 of Plaintiff's Complaint.

41.     Defendant denies the allegations contained in paragraphs 47 and 48 of Plaintiff's Complaint.  Defendant specifically denies that anything State Farm Lloyds has or has not done with regard to Plaintiff's insurance claim at issue in this action constitutes an alleged violation of any provision of the "Texas Deceptive Trade Practices Consumer Protection Act ('DTPA')" as asserted by Plaintiff in his Complaint, including but not limited to § 17.50 (a)(1)(3) or any provision of the Texas Insurance Code.

42.     Defendant denies the allegations contained in paragraph 49 of Plaintiff's Complaint.

43.     Defendant denies the allegations contained in paragraph 50 of Plaintiff's Complaint. Defendant specifically denies any entitlement by Plaintiff to damages pursuant to the DTPA and Texas Insurance Code §541.152 (a)-(b).

## "V.     BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING (against State Farm)"

44.     Defendant denies the allegations contained in paragraphs 51 and 52 of Plaintiff's Complaint. Defendant specifically denies that anything State Farm Lloyds has or has not done constitutes an alleged breach of the common law duty of good faith and fair dealing as asserted by Plaintiff in his Complaint.

## "VI.    ATTORNEY'S FEES"

45.     With regard to paragraph 53 of Plaintiff's Complaint, Defendant admits that Plaintiff appears to have retained the attorney whose name is subscribed to the Complaint to represent them in this action but denies the remaining allegations contained in paragraph 53. Defendant specifically denies that Plaintiff is entitled to the recovery of any attorney fees from State Farm or Mr. Sumrall as alleged by Plaintiff in the Complaint.

46.     Defendant denies the allegations contained in paragraph 54 of Plaintiff's Complaint and specifically denies Plaintiff is entitled to recover attorney's fees from Defendants pursuant to Tex. Civ. Prac. & Rem. Code §§ 38.001 – 38.003.

47.     Defendant denies the allegations contained in paragraph 55 of Plaintiff's Complaint and specifically denies Plaintiff is entitled to recover attorney's fees from Defendants pursuant to Tex. Bus. & Comm. Code §17.50(d).

48.     Defendant denies the allegations contained in paragraph 56 of Plaintiff's Complaint and specifically denies Plaintiff is entitled to recover attorney's fees from Defendants pursuant to Texas Insurance Code §§ 541.152 and 542.060.

### "I.    KNOWLEDGE"

49.    Defendant denies the allegations contained in paragraph 57 of Plaintiff's Complaint. Defendant specifically denies that (a) anything State Farm has or has not done as alleged by Plaintiff in his Complaint was "knowingly" done as that term is used in the Texas Insurance Code or (b) anything State Farm has or has not done as alleged by Plaintiff in his Complaint was a "producing cause" of Plaintiff's purported damages.

### "J.    DAMAGES"

50.    Defendant denies the allegations contained in paragraph 58 of Plaintiff's Complaint.  Defendant specifically denies that anything supposedly done or not done by State Farm or Mr. Sumrall as alleged in Plaintiff's Complaint was a "producing cause" of Plaintiff's purported damages.

51.    Defendant denies the allegations contained in paragraph 59 of Plaintiff's Complaint. Defendant specifically denies that anything supposedly done or not done by State Farm or Mr. Sumrall as alleged in Plaintiff's Complaint purportedly caused Plaintiff to be unable to repair the contended damage to Plaintiff's property from the alleged storm or caused any further damage to such property.

52.    Defendant denies the allegations contained in paragraph 60 of Plaintiff's Complaint. Defendant specifically denies any purported liability for any contended "breach of contract" as alleged by Plaintiff in this action.

53.    Defendant denies the allegations contained in paragraph 61 of Plaintiff's Complaint. Defendant specifically denies any purported liability for any contended "noncompliance with the Texas Insurance Code, Unfair Settlement Practices" as alleged by Plaintiff in this action.

54.     Defendant denies the allegations contained in paragraph 62 of Plaintiff's Complaint. Defendant specifically denies any purported liability for any contended "noncompliance with [the] Texas Insurance Code, Prompt Payment of Claims" as alleged by Plaintiff in this action.

55.     Defendant denies the allegations contained in paragraph 63 of Plaintiff's Complaint. Defendant specifically denies any purported liability for any contended "breach of the common law duty of good faith and fair dealing" as alleged by Plaintiff in this action.

56.     Defendant denies the allegations contained in paragraph 64 of Plaintiff's Complaint. Defendant specifically denies any purported liability for any contended "fraud" as alleged by Plaintiff in this action. Among other things, under Texas law, (a) any statements purportedly made in connection with post-loss investigation or handling of an insurance claim are not actionable misrepresentations; (b) matters of opinion are not actionable misrepresentations; (c) Plaintiff did not detrimentally rely upon any supposed acts, practices, or omissions of State Farm or Mr. Sumrall; and (d) no supposed act or omission that Plaintiff alleges to be attributable to State Farm or Mr. Sumrall was the proximate or producing cause of Plaintiff's alleged damages.

57.     With regard to paragraph 65 of Plaintiff's Complaint, Defendant admits that Plaintiff appears to have retained the attorney whose name is subscribed to the Complaint to represent them in this action but denies the remaining allegations contained in paragraph 65. Defendant specifically denies that Plaintiff is entitled to the recovery of any attorney fees from State Farm or Mr. Sumrall as alleged by Plaintiff in the Complaint.

**"Plaintiff's Complaint - K.  STATEMENT OF RELIEF AND DAMAGES"**

58.     No answer is necessary to paragraph 66 of Plaintiff's Complaint, as it concerns the damages amount required to be pled under the Texas Rules of Civil Procedure.  To the extent an

answer is required, Defendant admits that the amount in controversy pleaded by Plaintiff exceeds the sum of the minimum jurisdictional requirements.

### "Plaintiff's Complaint - L.   RESERVATION OF RIGHTS"

59.    No answer is necessary to paragraph 67 of Plaintiff's Complaint.  To the extent an answer is necessary, Defendant contends that the Federal Rules of Civil Procedure and any Scheduling Order entered by the Court will govern discovery and any amendment of pleadings.

### Plaintiff's Complaint - "M.  JURY DEMAND"

60.    No answer is necessary to the allegations in paragraph 68 of Plaintiff's Complaint as such paragraph concerns Plaintiff's request for a jury trial in this action. To the extent an answer is required, Defendant concurs with the request for a jury trial herein.

### Plaintiff's Complaint - "N.  Request for Disclosure"

61.    No answer is necessary to paragraph 69 of Plaintiff's Complaint, as it concerns Texas state court discovery.  As this case has been removed, the discovery is moot.

### Plaintiff's Complaint - "Prayer"

62.    The allegations in the paragraph labeled "Prayer" in Plaintiff's Complaint contain conclusions of law and do not require an answer. To the extent an answer is required, Defendant denies that Plaintiff is entitled to any recovery or relief as alleged in the paragraph labeled "Prayer" in Plaintiff's Complaint.

### ADDITIONAL DEFENSES TO PLAINTIFF'S ALLEGATIONS

### First Defense

63.    Defendant denies each and every material allegation made in Plaintiff's Complaint not previously controverted or admitted herein and demands that Plaintiff prove, by credible

evidence meeting the requisite standard of proof, each and every such material allegation made in Plaintiff's Complaint.

## Second Defense

64.     Plaintiff's Complaint, in whole or in part, fails to state a ground or claim upon which relief can be granted.

## Third Defense

65.     Plaintiff's claims are barred, in whole or in part, by the terms, conditions, exclusions, or limitations of the policy of insurance under which Plaintiff purports to be claiming in this action. Among its other terms, conditions, exclusions, or limitations, such policy specifies:

DECLARATIONS CONTINUED

We [State Farm Lloyds] agree to provide the insurance described in this policy:

1.     based on your [Plaintiff's] payment of premium for the coverages you chose;

2.     based on your compliance with all applicable provisions of this policy; and

3.     in reliance on your statements in these Declarations.

You [Plaintiff] agree, by acceptance of this policy, that:

1.     you will pay the premiums when due and comply with the provisions of this policy;

2.     the statements in these Declarations are your statements and are true;

3.     we insure you on the basis your statements are true; and

4.     this policy contains all of the agreements between you and us and any of our agents.

DEFINITIONS

*******

12.  "residence premises" means:

a.   the one, two, three, or four-family dwelling, other structures and grounds; or

      b.   that part of any other building;

where you reside and which is shown in the Declarations.

*******

## SECTION I - COVERAGES

## COVERAGE A - DWELLING

1.     Dwelling. We cover the dwelling used principally as a private residence on the residence premises shown in the Declarations.

*******

3.     Property Not Covered. We do not cover:

      a.   land, including the land necessary to support any Coverage A property;

      b.   any costs required to replace, rebuild, stabilize, or otherwise restore the land; or

      c.   the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

*******

## COVERAGE B - PERSONAL PROPERTY

1.     Property Covered. We cover personal property owned or used by an insured while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. …

*******

## COVERAGE C - LOSS OF USE

1.     Additional Living Expense. When a Loss Insured causes the residence premises to be uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by expiration of this policy.

*******

SECTION I - LOSSES INSURED

COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED.

COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

*******

2.    Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

*******

12.   Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a.    to the system or appliance from which the water or steam escaped;

b.    caused by or resulting from freezing;

c.    caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d.    caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.[1]

--------

[1] FE-5369.2.

*******

## SECTION I- LOSSES NOT INSURED

1.    We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

*******

    f.    except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

        (1)    heating, air conditioning or automatic fire protective sprinkler system;

        (2)    household appliance; or

        (3)    plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time.[2]

    g.    wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;[3]

    h.    corrosion, electrolysis or rust;

    i.    mold, fungus or wet or dry rot;

    j.    contamination;

*******

    l.    except as specifically provided by this endorsement, settling, cracking, shrinking, bulging, or expansion of pavements, patios, walls, floors, roofs or ceilings;[4]

    n.    pressure from or presence of tree, shrub or plant roots.

---

[2] FE-5368.2 Dwelling Foundation Endorsement (Texas) to the policy of insurance under which Plaintiff purports to be claiming in this action.

[3] FE-5369.2: For purposes of this endorsement, item 1.g. is replaced with, "g. wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown."

[4] FE-5368.2. In addition, FE-5369.2 provides that for purposes of that endorsement, item 1.l. is replaced with the following: "settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations."

*******

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2.    We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

*******

b.    Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Volcanic Action.

However, we do insure for any direct physical loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c.    Water, meaning:

(1)   flood, surface water, waves, (including tidal wave, tsunami, and seiche), overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2)   water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3)   water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

(4)   material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.[5]

d.   Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

*******

3.   We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time or after the loss or any other cause of the loss:

a.   conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b.   defect, weakness, inadequacy, fault or unsoundness in:

(1)   planning, zoning, development, surveying, siting;

(2)   design, specifications, workmanship, construction, grading, compaction;

(3)   materials used in construction or repair; or

(4)   maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c.   weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

*******

SECTION I – CONDITIONS

1.   Insurable Interest and Limit of Liability. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

---

[5]   FE-3533 Homeowners Policy Endorsement to the policy of insurance under which Plaintiff purports to be claiming in this action.

    a.    to the insured for an amount greater than the insured's interest; or

    b.    for more than the applicable limit of liability.[6]

*******

2.    Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:

    a.    give immediate notice to us or our agent. . .;

    b.    protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

    c.    prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

    d.    as often as we reasonably require:

        (1)    exhibit the damaged property;

        (2)    provide us with records and documents we request and permit us to make copies;

        (3)    submit to and subscribe, while not in the presence of any other insured:

            (a)    statements; and

            (b)    examinations under oath; and

        (4)    produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

    e.    submit to us within 91 days after the loss, your signed, sworn proof of loss

        (1)    which sets forth, to the best of your knowledge and belief:  the time and cause of loss;

        (2)    interest of the insured and all others in the property involved and all encumbrances on the property;

---

[6] FE-3533.

(3)  other insurance which may cover the loss;

(4)  changes in title or occupancy of the property during the term of this policy;

(5)  specifications of any damaged building and detailed estimates for repair of the damage;

(6)  an inventory of damaged or stolen personal property described in 2.c.;

(7)  receipts for additional living expenses incurred and records supporting the fair rental value loss; and

(8)  evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

f.   if the loss is caused by windstorm or hail in the catastrophe area as defined under Texas law, you must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period.[7]

*******

6.   Suit Against Us. No suit or action can be brought unless:

a.    there has been compliance with the policy provisions; and

b.   except as provided in item c. below, suit or action brought against us is started within two years and one day after the cause of action accrues;

c.   with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against us is started within the earlier of:

(1)  two years from the date we accept or reject the claim; or

(2)  three years from the date of the loss that is the subject of the claim.[8]

*******

10.  Mortgage Clause (without contribution)

a.   The word "mortgagee" includes trustee.

---

[7]    FE-3533.
[8]    FE-3533.

    b.  We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the Declarations as interests appear.

*******

## SECTION I AND SECTION II- CONDITIONS

1.    Policy Period. This policy applies only to loss under Section I or bodily injury or property damage under Section II which occurs during the period this policy is in effect.

2.    Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

*******

4.    Waiver or Change of Policy Provisions. A waiver or change of any provision of this policy must be in writing by us to be valid.

*******

7.    Assignment. Assignment of this policy shal1 not be valid unless we give our written consent.

*******

## FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT[9]

### DEFINITIONS

The following definition is added:

"fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

### SECTION I - LOSSES INSURED

Item 12.d. is replaced with the following:

    d.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust or wet or dry rot.

---

[9]    FE-5398.

Item 13.b. is replaced with the following:

    b.  caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust or wet or dry rot.

## SECTION I - LOSSES NOT INSURED

Item 1.i. is replaced with the following:

    i.  wet or dry rot;

In item 2., the following is added as item g.:

    g.  Fungus. We also do not cover:

      (1)  any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the residence premises or location of the rebuilding, repair or replacement, by fungus;

      (2)  any remediation of fungus, including the cost to:

        (a)  remove the fungus from covered property or to repair, restore, or replace that property; or

        (b)  tear out and replace any part of the building or other property as needed to gain access to the fungus; or

      (3)  the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of fungus, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

\*\*\*\*\*\*\*

## DWELLING FOUNDATION ENDORSEMENT[10]

## SECTION I – ADDITIONAL COVERAGES

The following is added:

Dwelling Foundation Coverage. We cover loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor

---

[10] FE 5368.2.

slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing only that particular part of the building necessary to gain access to the specific point of that system from which the leakage or seepage occurred.

We do not cover loss to the system from which the water or steam escaped.

Limit of Liability. Our limit of liability for this coverage will not exceed an amount equal to 15% of the COVERAGE A – DWELLING limit applicable on the date of loss.

## SECTION I – LOSSES NOT INSURED

The following revisions are made for the purpose of this endorsement only.

Item 1. f. is replaced with the following:

    f.    except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

        (1)    heating, air conditioning or automatic fire protective sprinkler system;

        (2)    household appliance; or

        (3)    plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

        which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

Item 1.l. is replaced with the following:

    l.    except as specifically provided by this endorsement, settling, cracking, shrinking, bulging, or expansion of pavements, patios, walls, floors, roofs, or ceilings;

Except as stated in this endorsement we do not provide coverage for any loss described in SECTION I – LOSSES NOT INSURED.

All other policy provisions apply.

*******

WATER DAMAGE ENDORSEMENT[11]

The following definition is added:

"fungus" means any type or form of fungus, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

## SECTION I – ADDITIONAL COVERAGES

The following is added:

Water Damage Coverage.

1.   We cover the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam from a:

   a.   heating, air conditioning or automatic fire protective sprinkler system;

   b.   household appliance; or

   c.   plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

   This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which seepage or leakage occurred.

2.   We do not cover:

   a.   loss to the system or appliance form which the water or steam escaped;

   b.   loss caused by, consisting of, or resulting from fungus; or

   c.   fungus which is the result of continuous or repeated seepage or leakage of water or steam from a:

      (1)   heating, air conditioning or automatic fire protective sprinkler system;

---

[11] FE-5369.2

    (2)   household appliance; or

    (3)   plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

## SECTION I – LOSSES INSURED

## COVERAGE B – PERSONAL PROPERTY

The following revisions are made for the purpose of this endorsement only.

Item 12 is replaced with the following:

12.   Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

Except as specifically provided by this endorsement, this peril does not include loss:

    a.   to the system or appliance from which the water or steam escaped;

    b.   caused by or resulting from freezing;

    c.   caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

    d.   caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust or wet or dry rot.

Item 13 is replaced with the following:

13.   Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

Except as specifically provided by this endorsement, this peril does not include loss:

    a.   caused by or resulting from freezing; or

      b.   caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust or wet or dry rot.

## SECTION I - LOSSES NOT INSURED

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

      f.   except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

        (1)  heating, air conditioning or automatic fire protective sprinkler system;

        (2)  household appliance; or

        (3)  plumbing system, including from, within or around shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

        which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out  and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance form which the water or steam escaped;

Item 1. g. is replaced with the following:

      g.   wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown;

Item 1. i. is deleted.

Item 1.l. is replaced with the following:

      l.   settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations;

Except as stated in this endorsement we do not provide coverage for any loss described in    SECTION I – LOSSES NOT INSURED.

*******

SECTION I – LOSS SETTLEMENT

COVERAGE A -DWELLING

    a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the Declarations, the damaged part of the property covered under SECTION I - COVERAGES, COVERAGE A - DWELLING, except for wood fences, subject to the following:

        (1)  until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the properly;

        (2)  when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;

        (3)  to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

        (4)  we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under Option OL – Building Ordinance or Law Coverage.

    b.  Wood Fences:  We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the Declarations for COVERAGE A – DWELLING EXTENSION.[12]

*******

OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the Declarations and is subject to all the terms, provisions, exclusions and conditions of this policy.

*******

---

[12] FE-3533.

Option ID - Increased Dwelling Limit. We will settle losses to damaged building structures covered under COVERAGE A - DWELLING according to the SECTION I - LOSS SETTLEMENT provision shown in the Declarations.

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the Declarations, we will pay the additional amounts not to exceed:

1.      the Option ID limit of liability shown in the Declarations to repair or replace the Dwelling; or

2.      10% of the Option I D limit of liability to repair or replace building structures covered under COVERAGE A - DWELLING, Dwelling Extension.

        Report Increased Values. You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the Declarations, if you fail to notify us of the increased value within 90 days.

            *******

Option OL - Building Ordinance or Law. (Applicable to HOMEOWNERS POLICY)

    1.      Coverage Provided.

            The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the Declarations of the Coverage A limit shown in the Declarations at the time of the loss, as adjusted by the inflation coverage provisions of the policy.  This is an additional amount of insurance and applies only to the dwelling.

    2.      Damaged Portions of Dwelling.

            When the dwelling covered under COVERAGE A – DWELLING is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3.    Undamaged Portions of Damaged Dwelling.

When the dwelling covered under COVERAGE A – DWELLING is damaged by a Loss Insured we will also pay for:

a.    the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

b.    loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

(1)  the enforcement is directly caused by the same Loss Insured;

(2)  the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

(3)  the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

(4)  the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

c.  legally required changes to the undamaged portions of any specific dwelling features, dwelling systems or dwelling components caused by the enforcement of a building, zoning or land use ordinance or law, if:

(1)   the enforcement is directly caused by the same Loss Insured; and

(2)   the requirement is in effect at the time the Loss Insured occurs.

We will not pay for legally required changes to specific dwelling features, dwelling systems or dwelling components that have not been physically damaged by the Loss Insured.[13]

4.   Building Ordinance or Law Coverage Limitations.

a.   We will not pay for any increased cost of construction under this coverage:

---

[13] FE-3533.

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

c. We will not pay more under this coverage than the amount you actually spend:

(1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

(2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area[,] and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph I. Coverage Provided of this option.

If the dwelling is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.[14]

*******

All other policy provisions apply.

---

[14] FE-3533.

### Fourth Defense

66.    Plaintiff's claims are barred, in whole or in part, because Mr. Sumrall does not have any contractual, statutory, or common law duty to pay damages pursuant to the policy of insurance under which Plaintiff purports to be claiming in this action. Mr. Sumrall is not a party to such policy; is not an insurance carrier; and Plaintiff is not consumers with respect to Mr. Sumrall and did not purchase or lease any goods or services from him. In addition, under Texas law, there is no cause of action for any supposedly negligent claims handling; any statements purportedly made in connection with post-loss investigation or handling of an insurance claim are not actionable misrepresentations; matters of opinion are not actionable misrepresentations; Plaintiff did not detrimentally rely upon any supposed acts, practices, or omissions of State Farm or Mr. Sumrall as alleged by Plaintiff in his Complaint; and no supposed act or omission that Plaintiff alleges in his Complaint to be attributable to State Farm or Mr. Sumrall was the proximate or producing cause of Plaintiff's contended damages.

### Fifth Defense

67.    Plaintiff's claims are barred, in whole or in part, because Plaintiff's insurance claim was reasonably investigated and adjusted. Further, any alleged liability for the insurance claim in question did not become and is not reasonably clear.

### Sixth Defense

68.    Plaintiff's claims are barred, in whole or in part, because there exist bona fide and legitimate issues with regard to the construction or applicability of certain insurance policy provisions and exclusions, compliance by Plaintiff with obligations under the policy under which Plaintiff purports to be claiming in this action, the nature and extent of the damages and losses alleged by Plaintiff, and the reasonableness of the sums claimed by Plaintiff.

**Seventh Defense**

69.     Texas law prohibits Plaintiff from obtaining more than one recovery for the same alleged damage and injury. See, e.g., *Myriad Development. Inc. v. Alltech, Inc.,* 817 F.Supp.2d 946, 982-983 (W.D. Tex. 2011); *Tony Gullo Motors I, LP v. Chapa,* 212 S.W.3d 299, 303 (Tex. 2006); *Waite Hill Services. Inc. v. World Class Metal Works, Inc.,* 959 S.W.2d 182, 184 (Tex. 1998).

**Eighth Defense**

70.     Plaintiff's causes of action are barred and Plaintiff is not entitled to any relief on the alleged causes of action to the extent that Plaintiff failed to mitigate Plaintiff's contended damages.

**Ninth Defense**

71.     Plaintiff's causes of action are barred and Plaintiff is not entitled to any relief on such causes of action to the extent that the doctrine of concurrent causes applies to Plaintiff's claim or claims.

**Tenth Defense**

72.     Plaintiff has the duty to establish the applicability of any exception to a policy exclusion by the greater weight and degree of credible evidence.

**Eleventh Defense**

73.     To any extent Plaintiff alleges any breach of the duty of good faith and fair dealing, Plaintiff is precluded from any such recovery in the absence of any breach of the policy of insurance under which Plaintiff purports to be claiming in this action. See *Liberty Mutual Insurance Co. v. Akin.* 927 S.W.2d 627, 629 (Tex. 1996). Further, Mr. Sumrall is not a party to the policy in question and therefore could not "breach" any such supposed duty of good faith and fair

dealing. See *Natividad v. Alexsis,* 875 S. W.2d 695, 698 (Tex. 1994); accord *HVAW v. American Motorists Insurance Co.,* 968 F.Supp. 1178, 1184 (N.D. Tex. 1997) (no contractual duty and no duty of good faith and fair dealing between claims manager and plaintiffs), aff'd, 149 F .3d 1175 (5th Cir. 1998).

## Twelfth Defense

74.    Further, a legitimate and bona fide dispute exists regarding whether there is any coverage available, or the extent to which there might be any coverage available, for Plaintiff's insurance claim under the policy in question. A mere bona fide coverage dispute does not constitute a breach of any duty of good faith and fair dealing to any extent alleged by Plaintiff in this action. See *United States Fire Insurance Co. v. Williams,* 955 S.W.2d 267, 268 (Tex. 1997); see also *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex. 1994).

## Thirteenth Defense

75.    To any extent Plaintiff claims recovery from Defendant for any supposed "negligence," "negligent claims handling," "gross negligence," or any variants thereof, Plaintiff is precluded from any such recovery because there is no cause of action in Texas for any supposedly negligent claims handling. See *Higginbotham v. State Farm Mutual Automobile Insurance Co.,* 103 F.3d 456, 460 (5th Cir. 1997); see also *United Services Automobile Association v. Pennington,* 810 S.W.2d 777, 783-784 (Tex. App. - San Antonio 1991, writ denied).

## Fourteenth Defense

76.    To any extent Plaintiff alleges any supposed claims under the Texas Insurance Code in the Complaint, Plaintiff is precluded from any recovery or relief thereunder because, among other things, (a) Plaintiff failed to satisfy one or more conditions precedent to any recovery under the statute; (b) State Farm Lloyds did not breach the insurance policy under which Plaintiff

purports to be claiming in this action; (c) Plaintiff has not sustained any damages independent of Plaintiff's alleged breach-of-contract theory; (d) Plaintiff did not detrimentally rely upon any supposed acts, practices, or omissions of State Farm or Mr. Sumrall; (e) Plaintiff's insurance claim was reasonably investigated and adjusted; (f) any alleged liability for Plaintiff's insurance claim did not become and is not reasonably clear; and (g) there is a bona fide coverage dispute concerning Plaintiff's insurance claim and the policy of insurance policy under which Plaintiff purports to be claiming in this action.

### Fifteenth Defense

77.    Plaintiff is not entitled to recover any attorney fees as alleged in the Complaint in this action. "Until a duty to pay under an insurance policy has been established, there is no just amount owed." See *Beacon National Insurance Co. v. Glaze,* 114 S.W.3d 1, 6 (Tex. App. – Tyler 2003, pet. denied); see also *Sikes v. Zuloaga,* 830 S. W.2d 752, 754 (Tex. App. - Austin 1992, no writ).

### Sixteenth Defense

78.    To any extent Plaintiff seeks any recovery of exemplary or punitive damages in this action, Plaintiff is unable to establish, by credible evidence meeting the requisite standard of proof, that Defendant was actually aware of any harm which Plaintiff alleges to have sustained as a result of the handling of Plaintiff's insurance claim; therefore, under the holding of *Transportation Insurance Co. v. Moriel,* 879 S.W.2d 10, 24 (Tex. 1994), Plaintiff is not entitled to any alleged exemplary or punitive damages because Plaintiff is unable to prove that Defendant was actually aware of an extreme risk resulting from the handling of Plaintiff's claim.

## Seventeenth Defense

79.     Plaintiff is unable to establish, by clear and convincing evidence, that State Farm or Mr. Sumrall acted with malice; therefore, under section 41.001(7) of the Texas Civil Practice and Remedies Code, Plaintiff is not entitled to any supposed exemplary or punitive damages that Plaintiff alleges in this action. See, e.g., *Smith v. O'Donnell,* 288 S.W.3d 417, 423-424 (Tex. 2009); see also *Dillard Department Stores, Inc. v. Silva,* 148 S.W.3d 370, 373-374 (Tex. 2004); *Universal Services Co. v. Ung,* 904 S. W.2d 638, 640-641 (Tex. 1995).

## Eighteenth Defense

80.     Additionally, to the extent the Complaint filed by Plaintiff in this action seeks any recovery of alleged punitive or exemplary damages, section 41.008 of the Texas Civil Practice and Remedies Code applies and any attempted recovery of alleged punitive or exemplary damages is subject to the statutory limits set forth therein, other applicable statutory authority, and common law.

## Nineteenth Defense

81.     Further, to any extent Plaintiff seeks any recovery of exemplary or punitive damages in this action, the same violates Article I, § 13 of the Texas Constitution and the Eighth Amendment of the United States Constitution and violates the rights of Defendant to substantive and procedural due process as provided in Article I, § 19 of the Texas Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. See *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 433-434 (2001); see also *BMW Corp. of N. America, Inc. v. Gore,* 517 U.S. 559, 562 (1996). Moreover, as a matter of state and federal constitutional law and sound public policy, any findings supporting an award of exemplary damages must be

based on clear and convincing evidence, not a mere preponderance of the evidence. *Cf* TEX. CIV.

PRAC. & REM. CODE ANN. § 41.003 (2014) (clear and convincing evidentiary standard).

### Twentieth Defense

82.    To the extent any other persons or entities (including any other defendants, third-party defendants, responsible third parties, or settling tortfeasors sued or who could have been sued in this action) caused or were proportionately responsible for any of the damages alleged in this action, then State Farm and Mr. Sumrall are entitled to credit or contribution from such other persons or entities in the unlikely event of any recovery by Plaintiff of any alleged damages in this action. Defendant therefore respectfully asks that the trier of fact determine each such person's or entity's percentage of responsibility for causing or contributing to cause in any way any of the damages as alleged in this action. By doing so, Defendant does not in any way admit any liability but continue to deny the allegations as now or as may be later made against Defendant in this action.

### Twenty-First Defense

83.    Under Texas law, Plaintiff cannot recover consequential damages for breach or repudiation of an insurance policy. See *Standard Fire Insurance Co. v. Fraiman,* 588 S.W.2d 681, 683 (Tex. Civ. App. - Houston [14th Dist.] 1979, writ refd n.r.e.); *Gross v. Connecticut General Life Insurance Co.,* 390 S. W.2d 388, 390 (Tex. Civ. App. - El Paso 1965, no writ); see also *Universe Life Insurance Co. v. Giles,* 950 S.W.2d 48, 60 (Tex. 1997) (Hecht, J., concurring in judgment) (insured's remedy for breach of contract "does not ordinarily include consequential damages") .

**Twenty-Second Defense**

84.     In addition, any amount or recovery of actual damages supposedly sustained by Plaintiff on account of any alleged breach of contract is limited to the subject insurance policy's applicable limit or sublimit of coverage, less the pertinent deductible (if any and if not already applied), and with credit being given for any sums paid or that might be paid to Plaintiff as a result of the insurance claim or claims as reported to State Farm Lloyds.

**Twenty-Third Defense**

85.     Plaintiff's causes of action are barred, in whole or in part, and Plaintiff is not entitled to any relief on such causes of action, to the extent Plaintiff failed or neglected to protect the property from further loss or failed or neglected to make reasonable and necessary repairs.

**Twenty-Fourth Defense**

86.     Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to satisfy one or more conditions precedent to recovery under the policy of insurance under which Plaintiff purports to be claiming in this action. Among others, Plaintiff failed to satisfy the condition precedent of demonstrating that there is any additional covered damage to Plaintiff's property for which Plaintiff has not already been compensated.

**Twenty-Fifth Defense**

87.     Plaintiff's claims are barred, in whole or in part, to the extent that the loss or losses alleged by Plaintiff were not fortuitous.

### Twenty-Sixth Defense

88.    Plaintiff's claims are additionally barred, in whole or in part, to the extent there has been no accidental direct physical loss within the coverage of the insurance policy under which Plaintiff purports to be claiming in this action.

### Twenty-Seventh Defense

89.    Plaintiff's causes of action are barred, in whole or in part, and Plaintiff is not entitled to any relief on Plaintiff's causes of action because some or all of Plaintiff's claims have been fully adjusted and, if applicable, payment made.

### Twenty-Eighth Defense

90.    Plaintiff's claims are barred, in whole or in part, to the extent that granting the relief alleged by Plaintiff would result in unjust enrichment.

### Twenty-Ninth Defense

91.    Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff's alleged damages or losses were caused or aggravated by the actions or inactions of Plaintiff, persons acting on Plaintiff's behalf, or third parties for whom Defendant is not legally responsible.

### Thirtieth Defense

92.    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff brought this action without complying with the provisions of the policy under which Plaintiff purports to be claiming in this action, including the "Your Duties After Loss" and "Suit Against Us" sections of such policy.

### Thirty-First Defense

93.    Plaintiff is not entitled to recover any alleged damages for emotional distress or mental anguish for the mere denial of an insurance claim. See *Transportation Insurance Co. v. Moriel,* 819 S.W.2d 10, 17 (Tex. 1994); accord *Avila v. State Farm Fire & Casualty Co.,* 147 F.Supp.2d 570, 579-580 (W.D. Tex. 1999) (citing *Latham v. Castillo,* 972 S.W.2d 66, 70 [Tex. 1998]).

### Thirty-Second Defense

94.    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff alleges or otherwise seeks to invoke the doctrines of waiver or estoppel in this action. The doctrines of waiver and estoppel cannot be used to change, re-write or otherwise enlarge the risks covered by an insurance policy, and may not be used to establish coverage for risks expressly excluded from the insurance policy. See, e.g., *Minnesota Mutual Life Insurance Co. v. Morse,* 487 S.W.2d 317, 319 (Tex. 1972); *Washington National Insurance Co. v. Craddock,* 130 Tex. 251, 254-255, 109 S.W.2d 165, 166-167 (1937); *Great American Reserve Insurance Co.* v. *Mitchell,* 335 S.W.2d 707, 708 (Tex. Civ. App. - San Antonio 1960, writ ref'd n.r.e.).

### Thirty-Third Defense

95.    Defendant is entitled to an offset or credit for any and all sums paid or that might be paid to Plaintiff as a result of the insurance claim alleged by Plaintiff in the Complaint in this action.

### Thirty-Fourth Defense

96.    In the alternative, and to the extent, if any, that other persons or entities caused any of the damages supposedly sustained by Plaintiff, then State Farm Lloyds was and is subrogated to Plaintiff's claims against and entitled to reimbursement from all such other persons or entities

by virtue of the payment or payments made or to be made by State Farm Lloyds incident to Plaintiff's insurance claim.

### Thirty-Fifth Defense

97.    Defendant adopts by reference each defense not hereinabove alleged, if any, that may be alleged in any pleading filed in this action by any other defendant, third-party defendant, responsible third party, or other party or parties as may now or later be brought into this action.

### DEFENSES ASSERTED IN THE ALTERNATIVE
### AND RESERVATION OF RIGHT TO ASSERT OTHER DEFENSES

98.    Each of the defenses of Defendant is asserted in the alternative.

99.    Defendant hereby give notices that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserves the right to amend this pleading to assert such defenses.

### CONCLUSION

100.    For and in consideration of the foregoing, Defendant State Farm Lloyds respectfully prays that Plaintiff take nothing by reason of Plaintiff's Complaint and that Defendant State Farm Lloyds have and recover from Plaintiff the costs incurred by it in connection with this action. In addition, Defendant respectfully requests such other and further relief to which it may be justly entitled.

Respectfully submitted,

**ORTIZ & BATIS, P.C.**

By:____*/s/ Ray R. Ortiz*_____

            Ray R. Ortiz – Attorney in Charge
            State Bar No. 15324280
            Southern District Bar No. 14026
            Leslie Megin Koch
            State Bar No. 00794109
            Southern District Bar No. 19546
            ray@ob-lawpc.com
            megin@ob-lawpc.com
            rrosupport@ob-lawpc.com
10100 Reunion Place, Suite 600
San Antonio, TX 78216
Telephone: (210) 344-3900
Facsimile:  (210) 366-4301
**COUNSEL FOR DEFENDANT,**
**STATE FARM LLOYDS**

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served to all counsel of record in accordance with the Federal Rules of Civil Procedure on July 21, 2017.

      Mr. Matthew M. Zarghouni
      ZAR LAW FIRM
      7322 Southwest Fwy, Suite 1965
      Houston, Texas 77074
      Matt@zar-law.com

           ___*/s/ Ray R. Ortiz*_____
           Ray R. Ortiz